IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| OPEN TEXT S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  2:13-CV-00320-AWA-LRL |
| | ) |
| ALFRESCO SOFTWARE LTD; ALFRESCO | ) JURY TRIAL DEMANDED |
| SOFTWARE, INC.; and CARAHSOFT | ) |
| TECHNOLOGY CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION
FOR FAILURE TO STATE A CLAIM**

All claims in two of the asserted patents encompass a very basic marketing method: Select a sub-set of people from a group with which one has communicated and then perform an action with the sub-set (like sending a marketing e-mail to the sub-set).  An example of the marketing method in the patents involves asking a group of customers "How was your order?" and sending another communication to those who respond "Bad."

The patents' claims "computerize" the marketing method, *i.e.*, the claims include language that indicates that computer hardware and/or software can carry out the method.  After the patents were granted, however, the Supreme Court issued its opinion in *Mayo* clarifying that a patent claim is invalid as a matter of law under § 101 of the Patent Act—the section governing what subject-matter is eligible for patenting—if the claim (1) encompasses an abstract concept and (2) does not require another "inventive concept."  Marketing methods like those claimed here are abstract concepts—this is recognized by the Federal Circuit, the U.S. Patent Trial and

1

Appeal Board, and, recently, the Patent Office's written procedures for its examiners.  Moreover, the Supreme Court and Federal Circuit hold that placing a method into a particular technological environment, such as adding conventional computer hardware or computer activity to the method (or otherwise "computerizing" it), does not constitute an "inventive concept."  The invalidity of the claims of these two patents is plain under the case law issued after the patents were granted.

Indeed, over the past 24 months, the Federal Circuit analyzed software-related claims involving a method or a storage medium under § 101 in six cases.  In five, the court found claims invalid under § 101.[1]  The case now before this Court presents another case in which such claims are invalid.  The one decision finding such claims valid, *Ultramercial*, addressed a method claim specifying a very large number of steps—eleven—with multiple narrowing terms that caused the claim to be relatively narrow in scope.[2]  Here, in contrast, the claims are straightforward, include few steps, are not as narrow in scope, and "computerize" the basic marketing method, which the Supreme Court and Federal Circuit hold cannot save a claim from invalidity.

The Supreme Court and Federal Circuit also hold that when a dispositive issue of law (such as invalidity under § 101) is resolvable at the 12(b)(6) stage against the plaintiff, it is proper to grant a motion to dismiss under Rule 12(b)(6).  District courts now grant 12(b)(6) motions in light of invalidity of patent claims under § 101.  Indeed, at least <u>eight</u> recently did so. The claims at issue here are much more similar to the claims addressed in the five Federal Circuit cases and these district court cases than in *Ultramercial*.

---

[1] *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1287 (Fed. Cir. 2013) (en banc); *Bancorp Servs., LLC v. Sun Life Assurance Co.*, 687 F.3d 1266 (Fed. Cir. 2012); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).

[2] *Ultramercial, Inc. v. Hulu, LLC*, No. 2010-1544, 2013 WL 3111303, at *1-2 (Fed. Cir. June 21, 2013), *reconsidering* 657 F.3d 1323 (Fed. Cir. 2011), *vacated by* 132 S. Ct. 24131 (2012).

Also, dismissal of the plaintiff's claims as to the two patents would significantly narrow the case because it would eliminate half of the subject matter at issue.  Dismissal would (1) remove the need to engage in full, formal claim construction for the 71 patent claims in the two patents, (2) shorten the jury trial by eliminating the need to present evidence on a second subject matter (marketing methods), (3) allow for more-focused discovery, and (4) save significant resources of the Court and the parties.  Waiting until after claim-construction and summary-judgment briefing to find these patents invalid, instead of doing so now, would unnecessarily take up a great deal of the Court's and the parties' resources.

Accordingly, Alfresco Software Ltd. and Alfresco Software, Inc. (together, "Alfresco"), and Carahsoft Technology Corp. ("Carahsoft"), move the Court to dismiss claims in the Complaint of Open Text S.A. ("Open Text") that relate to the two patents here (the first and second causes of action).  Alfresco and Carahsoft provide this brief in support of their motion.

## I.    FINDING INVALIDITY UNDER § 101 IS PROPER AT THE 12(B)(6) STAGE.

Section 101 governs whether the subject matter claimed in a patent claim is eligible for patenting.[3]  If a patent claim encompasses subject matter ineligible for patenting, the claim is invalid under § 101.[4]  One of the underlying concerns is that "patents covering such elemental concepts would reach too far and claim too much, on balance, obstructing rather than catalyzing innovation."[5]

Here, it is proper for the Court to find both patents invalid under § 101 of the Patent Act at the 12(b)(6) stage.  The Federal Circuit and at least eight district courts hold that it is proper to find patents invalid under § 101 at the 12(b)(6) stage without formal claim construction

---

[3] 35 U.S.C. § 101. *See generally* Donald S. Chisum, *Chisum on Patents*, § 1.01 (2013).
[4] *See, e.g.*, *CLS Bank*, 717 F.3d at 1287; *Bancorp*, 687 F.3d at 1281.
[5] *CLS Bank*, 717 F.3d at 1277.

procedures.[6]   Prior to the Federal Circuit's 2011 decision in *Ultramercial*, some district courts found it proper to find patent claims invalid under § 101 at the 12(b)(6) stage.[7]   Others found it improper to consider invalidity at the 12(b)(6) stage based on the premise that formal claim construction procedures are necessary to analyze invalidity under § 101 and claim construction comes later in the litigation.[8]   In *Ultramercial*, however, the Federal Circuit rejected this premise.   The Federal Circuit clarified that it is proper for courts to consider the invalidity of asserted claims(s) under § 101 at the 12(b)(6) stage.[9]   In *Ultramercial*,  the district court held patent claims invalid under § 101 at the 12(b)(6) stage and dismissed the complaint.[10]   On appeal, the Federal Circuit reasoned that the court's determination of "the subject matter at stake

---

[6] *See, e.g., Ultramercial,* 2013 WL 3111303, at \*3; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc.*, No. 12-2501 (MAS) (TJB), Dkt. Nos. 64, 65 (D.N.J. July 31, 2013) (attached as **Exhibit 1**); *CardPool v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at \*3–4 (N.D. Cal. Jan. 22, 2013); *Uniloc USA, Inc. v. RackSpace Hosting, Inc.*, No. 6:12-cv-375, ECF Dkt. No. 38 (E.D. Tex. Jan. 3, 2013) (attached as **Exhibit 2**); *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, No. Civ-12-360-M, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012); *Graff/Ross Holdings LLP v. Fed. Home Loan Mort. Corp.*, 892 F. Supp. 120 (D.D.C. 2012) (converting 12(b)(6) motion into a summary judgment motion and granting it)*; Vacation Exch., LLC v. Wyndham Exch. & Rentals, Inc.*, No. 12-04229, Dkt. 27, at 2–6 (C.D. Cal. Sep. 18, 2012) (attached as **Exhibit 3**); *OIP Tech., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118, at \*5 (N.D. Cal. Sept. 11, 2012); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252 (FSH), 2011 WL 1870591, at \*1–4 (D.N.J. May 16, 2011), *appeal dismissed by* 459 F. App'x 916 (Fed. Cir. Aug. 25, 2011); *see also Buysafe, Inc. v. Google Inc.*, No. 1:11-cv-01282-LPS, Dkt. 69 (D. Del. July 29, 2013) (finding claims invalid under § 101 when applying 12(b)(6) standards in response to Rule 12(c) motion) (attached as **Exhibit 4**).

[7]  *See, e.g.*, *Ultramercial, LLC v. Hulu, LLC*, No. CV 09-06918, 2010 WL 3360098, at \*2–7 (C.D. Cal. Aug. 13, 2010), *rev'd on other grounds*, 657 F.3d 1323, 1325 (Fed. Cir. 2011), *vacated on other grounds sub. nom*, *WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012), *on remand to* --- F.3d ---, No. 2010-1544, 2013 WL 3111303 (Fed. Cir. June 21, 2013); *Glory Licensing*, 2011 WL 1870591, at \*1–4.

[8] *See Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10 CV 1370, 2010 WL 4698576, at \*5 (N.D. Ohio Nov. 12, 2010); *Edge Capture, L.L.C. v. Barclays Bank PLC*, No. 09 C 1521, 2011 WL 494573, at \*1 (N.D. Ill. Jan. 31, 2011).

[9] *See Ultramercial*, 657 F.3d at 1325, 1326–30.

[10] *See Ultramercial*, 2010 WL 3360098, at \*7.

and its eligibility does not require claim construction."[11]  On remand, after the Supreme Court vacated on other grounds, the Federal Circuit again confirmed that it is proper to find patents invalid under § 101 at the 12(b)(6) stage without formal claim construction procedures.[12]

Deciding invalidity under § 101 at the 12(b)(6) stage is also consistent with Supreme Court and Fourth Circuit precedent.  The Supreme Court holds that "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate …."[13]  Invalidity under § 101 is "an issue of law,"[14] and thus if the Court finds that it is correctly resolved against Open Text, dismissal on Rule 12(b)(6) grounds is appropriate under Supreme Court precedent.  Likewise, the Fourth Circuit holds that "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint," then the district court may rule on the affirmative defense in response to a motion to dismiss filed under Rule 12(b)(6).[15]  Here, the patents at issue are part of the pleadings[16] and the claims appear clearly on inspection of the patents, and thus the Court may find both patents invalid under § 101 of the Patent Act at the 12(b)(6) stage.

---

[11] *Ultramercial*, 657 F.3d at 1325.

[12] *Ultramercial*, 2013 WL 3111303, at *3–4 ("This court has never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility. Indeed, … claim construction may not always be necessary for a § 101 analysis.").

[13] *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

[14] *In re Bilski*, 545 F.3d  943, 951 (Fed. Cir. 2008) (*en banc*) (citations omitted), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010).

[15] *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis removed); *see also Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A] claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

[16] Dkt. No. 1 ("Complaint") at Ex. A (U.S. Patent No. 7,647,372) & Ex. B (U.S. Patent No. 7,975,007).

As Open Text may note, the Federal Circuit recently said that dismissal at the 12(b)(6) stage under § 101 may be rare because of the presumption of validity.[17]  The court explained, however, that dismissal is nevertheless proper when "the *only* plausible reading of the patent" demonstrates "clear and convincing evidence of ineligibility."[18]  As shown below, the only plausible reading of the two patents at issue in Defendants' motion demonstrates clear and convincing evidence of ineligibility.[19]  The patents claim a basic marketing scheme, with no "inventive concept" or tie to a particular machine or transformation, added to the claims.[20]  Supreme Court and Federal Circuit precedent clearly show that such claims are invalid.[21]  The Federal Circuit has noted that historical fact analysis (outside the complaint) may sometimes be required for § 101 analysis instead of a decision at the 12(b)(6) stage.[22]  Here, though, such outside-the-complaint analysis is not needed because any fact necessary is associated with the complaint—*e.g.*, the attached patents themselves indicate that any computer hardware and/or software recited in the claims were conventional and thus not "inventive concepts" when the applications were filed.[23]

Moreover, the Supreme Court holds that the § 101 inquiry is a "threshold" inquiry for the courts[24] and that the 12(b)(6) stage addresses threshold issues.[25]  A finding of invalidity would eliminate one of the two asserted patent families from the case.  Such a finding now would

---

[17] *Ultramercial*, 2013 WL 3111303 at *2.

[18] *Id.*

[19] *See infra* Section IV.

[20] *See id.*

[21] *See id.*

[22] *Ultramercial*, 2013 WL 3111303, at *3–4.

[23] *See* Manual of Patent Examining Procedure ("MPEP"), § 2164.01 (8th ed., 9th rev.) ("A patent need not teach, and preferably omits, what is well known in the art.") (citations omitted) (attached as **Exhibit 5**); *see, e.g.*, *infra* nn. 66–71, 110–113.

[24] *See Bilski*, 130 S. Ct. at 3225; *In re Comiskey*, 554 F.3d 967, 973 (Fed. Cir. 2009) (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)).

[25] *See Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

streamline discovery, would greatly lessen the burden on the Court and the parties in any formal claim construction process, would greatly simplify any trial, would focus the case and, ultimately, save judicial and party resources.

In sum, the two patents at issue present a situation in which the invalidity of the claims under § 101 is clearly manifest from the material associated with the complaint. A finding of invalidity is appropriate now.

## II.    LEGAL STANDARDS FOR MOTIONS TO DISMISS UNDER RULE 12(B)(6)

The issues presented by this motion—invalidity under § 101 and the scope of patent claims—are questions of law.[26] The Supreme Court holds that "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate …."[27] The Federal Circuit has stated that Rule 12(b)(6) "requires courts to … require the accused infringer to establish that the only plausible reading of the claims is that, by clear and convincing evidence, they cover ineligible subject matter," but the Court may also "choose to construe the claims in accordance with this court's precedent."[28] At the 12(b)(6) stage, "[w]hile the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff."[29] In analyzing a motion to dismiss, a court may consider the complaint and its

---

[26] *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*), *aff'd, Bilski*, 130 S. Ct. at 3218; *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 934 (Fed. Cir. 2013).

[27] *Neitzke*, 490 U.S. at 328; *see also Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 86 (1981) ("the basic legal questions raised by the motions to dismiss … are ripe for decision"); *Guessefeldt v. McGrath*, 342 U.S. 308, 310 (1952) ("[a]ccepting the allegations as true for the purpose of dealing with the legal issues raised by the motions to dismiss").

[28] *Ultramercial*, 2013 WL 3111303, at *3.

[29] *Kansa Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citing *Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir. 1989)); *see also Neitzke*, 490 U.S. at 328.

attachments.[30]  In a patent case, the court may consider the asserted patents, the prior art cited on

the face of the patents, and the patents' prosecution history, all of which is public record.[31]

## III.    FACTUAL BACKGROUND

Open Text's complaint asserts that certain software infringes nine of its patents.[32]  The

nine patents, however, are, in effect, only two patents.  The nine patents include two groups of

patents sharing common ancestry—known as "patent families."[33]  The patents in each of the two

patent families have nearly-identical text.[34]  The patents do not state why the patentee filed

largely-repetitive patent applications.

While the patents within each patent family are largely duplicative, the two patent

families themselves claim two different concepts.  The first family claims a marketing method.[35]

---

[30] *See, e.g.*, *Smith v. McCarthy*, 349 F. App'x 851, 856 (4th Cir. Oct. 28, 2009) ("In considering motions to dismiss under Rule 12(b)(6), the court may properly consider exhibits attached to the complaint."); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 32 (2012).

[31] *See, e.g.*, *Cornucopia Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086, 1090 (D. Ariz. 2012) (taking judicial notice of "patents in suit and their file histories" in deciding motion to dismiss); *Music Makers Holdings, LLC v. Sarro*, No. 09-cv-1836, 2010 WL 2807805, at *2 n.1 (D. Md. July 15, 2010) ("The Court may take judicial notice of matters of public record from sources— such as the PTO—whose accuracy cannot be reasonably questioned."); *Applied Materials, Inc. v. Advanced Semiconductor Materials of Am., Inc.*, No. C-92-20643, 1994 WL 270714, at *2 (N.D. Cal. Apr. 19, 1994) (taking "judicial notice of the United States Patent Office's public records of the proceedings" related to asserted patents at 12(b)(6) stage); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record …"); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (taking judicial notice of publicly available statistics, though not attached to complaint, in reviewing a complaint under Rule 12(b)(6)).

[32] *See, e.g.*, Dkt. No. 1 ("Complaint") at ¶¶ 45–53, ¶¶55–122.

[33] Patent Family 1: Complaint, Exs. A–B (U.S. Patent No. 7,647,372 and U.S. Patent No. 7,975,007, which is a continuation of  U.S. Patent No. 7,647,372).  Patent Family 2: Complaint, Exs. C–I (all claiming priority to U.S. Patent No. 6,223,177—Complaint, Ex. C).

[34] *Compare, e.g.*, Complaint, Ex. A (the "'372 patent") *with* Ex. B (the "'007 patent").

[35] *See* '372 patent, Abstract ("Systems and methods for carrying on marketing dialogues are disclosed. Specifically, embodiments of the systems and methods presented may allow marketing dialogues to be carried on with a set of participants by sending a communication to each of the participants."); *see, e.g.*, *id.* at Claim 1; '007 patent, Claim 1.

8

The second family relates to software used by more than one person to provide a collaborative workspace.[36]  Only the first patent family is at issue in this motion.

The two patents in the first family—U.S. Patent No. 7,647,372 ("the '372 patent") and U.S. Patent No. 7,975,007 ("the '007 patent")—claim a marketing method, referred to in the patents as "marketing dialogues."[37]  The two patents explain that "[t]his invention relates to methods and systems for interactive marketing and for conducting interactive marketing."[38]

The marketing method is very straightforward.  The patents summarize it:

> [A]n embodiment of the present invention may allow marketing dialogues to be carried on with a set of participants by sending a communication to each of the participants.  Based on this communication another set of participant may be assembled from the initial participants, for example based on an event such as a response to the initial communication, the passage of a certain amount of time, an interaction with the initial communication, etc.  An action may then be taken with respect to this second set of participants.  The action may be, for example, based on the event used to determine the second set of participants.[39]

An excerpt from Figure 2 of the patents, below, shows an example of the method (bracketed letters and arrows inserted by counsel for ease of reference):

---

[36] *See, e.g.*, Complaint, Ex. C (U.S. Patent No. 6,223,177), claim 1 ("A system for providing a collaborative workspace …").  Since there are seven patents in the second family, it did not seem appropriate to address them in this brief.
[37] *See, e.g.*, '372 patent, Abstract.
[38] '372 patent, col. 1, ll. 2–24; '007 patent, col. 1, ll. 30–31.
[39] '372 patent, col. 2, ll. 4–14; '007 patent, col. 2, ll. 8–18.



As shown in the flow chart, the marketing method involves [a] selecting a "Sample" of participants (such as a set of customers). The patents explain that "[f]or example, a marketer might want to ask a certain question only to (for example) 10 percent of its customers, so that it is not overwhelmed by the volume of responses."[40] The method then pauses for 5 days (so, for example, not to send a participant communication too frequently). The method next involves [b] a first communication sent to the customers in the sample: "How was your order?" The method then involves [c] determining the customers' responses to the question. The method next involves [d] a specific action with sub-sets of the sample (such as a second communication).

---

[40] '372 patent, col. 4, ll. 57–60; '007 patent, col. 4, ll. 56–59. In the example shown in Figure 2, the certain question is asked of 40%. *See* '372 patent, Fig. 2; '007 patent, Fig. 2.

The sub-set in which the customer resides depends on their response to the first communication sent to the customer—in Figure 2, the question "How was your order?"  The method shown involves the action of a second communication sent to sub-sets of the customers in the sample.  For the sub-set of the sample customers whose response is "Great," the method involves communicating a "Thank You Message." For the sub-set of customers whose response is "Bad," the method involves communicating with the customer by calling the customer.  And, for those sub-set of customers for which there is "no response," the method involves communicating again to the customer the question "How was your order?" [41]

### A.    THE '372 PATENT

The '372 patent discusses computerizing this marketing method.  It explains that a person can write "scripts" to define a marketing method, which may be compiled into computer instructions for carrying out the method.[42]

Claims of patents are like real-estate deeds—they define the scope of what the owner claims as the owner's property.  The '372 patent includes claims to (1) marketing "method[s]" and (2) "computer-readable storage media" (a frequent example of such media is a computer disk) with instructions to carry out such methods.

Claim 1 of the '372 patent is representative:

A method for facilitating a network based dialogue, comprising:

[**a**] obtaining a set of first corresponding participants;

[**b**] executing a first instruction of a first program,
wherein first program is associated with each of the set of first corresponding participants and the first instruction is operable to send a first communication to each of the set of first corresponding participants;

[**c**] assembling a set-of second corresponding participants,

---

[41] *See* '372 patent, Fig. 2; '007 patent, Fig. 2.
[42] *See, e.g.*, '372 patent, col. 3, ll. 4–10; ll. 32–46.

wherein each of the set of second corresponding participants is in the set of first corresponding participants, a first specified event has occurred in conjunction with each of the set of second corresponding participants and the set of second corresponding participants is assembled by determining the occurrence of the first specified event in conjunction with each of the set of second corresponding participants; and

[**d**] executing a second instruction in conjunction with each of the second set of corresponding participants,
wherein the second instruction is associated with a first action to be performed in conjunction with each of the set of second corresponding participants.[43]

Essentially, Claim 1 is directed towards the steps of (1) sending a communication to a first set of people (steps a and b), (2) selecting a sub-set of those people based on an event (step c), and (3) performing an action with the people in the sub-set (step d).  The steps of claim 1 are directed towards the basic marketing method described in Figure 2 above, except that the steps of the claim are stated in even broader, more-general terms than Figure 2.[44]

The '372 patent includes a second independent method claim, claim 16.  It is very similar to the first.  It is as follows:

A method for facilitating a network based dialogue, comprising:

[**a/b**] assembling a set of first corresponding participants, wherein assembling the first set of corresponding participants comprises executing a first instruction of a first program in conjunction with each of the first corresponding participants, wherein the first instruction is operable to determine the occurrence of a first specified event in conjunction with each of the first corresponding participants;

[**c**] assembling a set of second corresponding participants, wherein each of the set of second corresponding participants is in the set of first corresponding participants; and

[**d**] executing a second instruction in conjunction with each of the second set of corresponding participants, wherein the second instruction is associated with a

---

[43] The bracketed letters and spacing in the representative claims are not part of the claims.  They have been inserted by Alfresco and Carahsoft for ease of reference to parts of the claim.
[44] *Compare* '372 patent, Claim 1 *with* '372 patent, Fig. 2.

first action to be performed in conjunction with each of the set of second corresponding participants.

As is apparent from the above, there is little difference between claim 1 of the '372 patent and claim 16 of the '372 patent. Step [a/b] of claim 16 combines steps [a] and [b] of claim 1. Step [a/b] of claim 16 is directed towards requiring that step [a] of claim 1 be accomplished by carrying out step [b] of claim 1. The claims of the '372 patent to "computer-readable storage media," discussed in Section IV.C, are also largely indistinguishable from the method claims.

### B.      THE '007 PATENT

The text of the '007 patent is virtually identical to the text of the '372 patent. In fact, as stated on the front of the '007 patent, the '007 patent is a "continuation" of the '372 patent —*i.e.*, a "second application *for the same invention*."[45] Like the '372 patent, the '007 patent discusses computerizing marketing methods.[46]

The '007 patent includes claims to (1) marketing "method[s]" and (2) systems and products including a storage medium that store instructions to carry out such methods.[47] The claims of the '007 patent are very similar to the claims of the '372 patent. Claim 1 of the '007 patent is representative of the claims in the '007 patent and is follows:

A method for facilitating a network based dialogue, comprising:

[**a**] obtaining a set of first corresponding participants at a server configured with a first program;

[**b**] executing a first instruction of the first program,
        wherein the first program is associated with each of the first corresponding participants, the first instruction is operable to send a first communication to each of the set of first corresponding participants;

[**c1**] assembling a set of second corresponding participants,

---

[45] MPEP, § 201.07 (attached at **Exhibit 5**) ("A continuation is a second application for the same invention claimed in a prior nonprovisional application ….").

[46] *See, e.g.*, '007 patent, col. 3, ll. 8–13; ll. 35–49.

[47] *See, e.g.*, '007 Patent, Claims 1, 21, and 26.

wherein each of the set of second corresponding participants is in the set of first corresponding participants;

[**c2**] determining that a first specified event has occurred in conjunction with each of the set of second corresponding participants, wherein the set of second corresponding participants is assembled by determining the occurrence of the first specified event in conjunction with each of the set of second corresponding participants; and

[**d**] executing a second instruction in conjunction with each of the second set of participants, wherein the second instruction is associated with a first action to be performed in conjunction with each of the second corresponding participants.

The primary differences between claim 1 of the '372 patent and claim 1 of the '007 Patent are (1) the "at a server" phrase has been added to step [a] and (2) step [c] of the '372 patent has been re-written into two steps, steps [c1] and [c2].[48]  Aside from these changes, the two claims are essentially the same.  The steps of the claim are again directed towards the basic marketing method described in Figure 2 above.

As can be seen, the steps of claim 1 of the '007 patent are also directed towards the basic marketing method described in Figure 2 and are stated broader than even Figure 2.[49]  Like claim 1 of the '372 patent, claim 1 of the '007 patent is essentially directed towards the steps of (1) sending a communication to a first set of people (steps a and b), (2) selecting a sub-set of those people based on an event (steps [c1] and [c2]), and (3) performing an action with the people in the sub-set (step [d]).

Thus, the claims of the '372 patent and the '007 patent encompass a very basic marketing method, as well as media, systems, and products having media with instructions to carry out the very basic marketing method.  The claims of the two patents at best add various computer-related limitations to the very basic marketing method in order to "computerize" the method.  Such

---

[48] *Compare* '372 patent, Claim 1 *with* '007 patent, Claim 1.
[49] *Compare* '007 patent, Claim 1 *with* '007 patent, Fig. 2.

limitations include "network," "program," "server," "instructions," "computer-readable storage medium," and other well-known, conventional computer-related functionality.[50]

## IV.    THE PATENT CLAIMS OF THE '372 PATENT AND THE '007 PATENT ARE INVALID UNDER § 101 OF THE PATENT ACT.

The claims of these two patents recite nothing more than words to "computerize" a very basic marketing method.  Using standard operations of a computer to implement a marketing method, however, does not meet the requirements of § 101 under the rules clarified by the Supreme Court and the Federal Circuit after these two patents issued.  The claims of the two patents include method claims and claims that include a computer readable medium.  Under the clarified rules, the claims of the two patents are plainly invalid.

### A.    THE INDEPENDENT METHOD CLAIMS OF BOTH PATENTS ENCOMPASS AN ABSTRACT MARKETING METHOD AND FAIL THE SUPREME COURT'S "ADDITIONAL INVENTIVE CONCEPT" TEST.

The three independent method claims at issue[51] are invalid under § 101 because they encompass an abstract idea (a marketing method) and no additional "inventive concept."  The Supreme Court holds that if a patent claim (1) encompasses an abstract idea and (2) does not include an "inventive concept" beyond the abstract idea, the claim is invalid under § 101.[52]

The Federal Circuit explains that "[a]n abstract idea is one that has no reference to material objects or specific examples— *i.e.,* it is not concrete."[53]  The Federal Circuit further explains that "abstract ideas constitute disembodied concepts or truths which are not 'useful' from a practical standpoint standing alone, *i.e.*, they are not 'useful' until reduced to some

---

[50] *See, e.g.*, '372 patent, Claims 1 (including "network," "program," "instruction") and Claim 22 ("A computer readable storage medium …"); '007 patent, Claims 1 ("a server configured with a first program") and Claim 18 ("a first interface for a dialog engine running on the first server").

[51] '372 patent, claims 1 and 16, and '007 patent, claim 1.

[52] *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289,1293–94, 1299–1300 (2012); *Parker v. Flook*, 437 U.S. 584, 594 (1978); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1287 (Fed. Cir. 2013) (en banc).

[53] *Ultramercial,* 2013 WL 3111303, at *7.

practical application."[54]  The method claims here encompass a classic abstract idea:  Select a sub-set of people from a group with which you have communicated and then perform an action with the sub-set (such as communicate with the sub-set again).[55]  Of course, the concept of selecting people and then communicating with them is a broad, abstract concept.

This abstract idea can be seen clearly in the example shown in the patents (Figure 2), described herein on pages 8–11.  It is seen most clearly in the claims, which are broader than the discussed example.  Steps [a]-[d] of the claims, described herein on pages 11–15, encompass the abstract idea of selecting a sub-set of people from a group with which you have communicated and then performing an action with the sub-set.[56]  Identifying an abstract idea in a patent claim can sometimes present challenges, but this is not one of those times.  The patents make clear from the beginning—including their Abstracts ("another set of participant[s] may be assembled from the initial participants and an action may then be taken with respect to this second set of participants")—that something abstract is contemplated.

Indeed, in *In re Ferguson*, the Federal Circuit held that claims reciting methods of marketing encompass abstract subject-matter and are thus invalid.[57]  The court explained:

> At best it can be said that Applicants' methods are directed to organizing business or legal relationships in the structuring of a sales force (or marketing company).  But as this court stated in *Bilski*, "[p]urported transformations or manipulations

---

[54] *In re Alappat*, 33 F.3d 1526, 1543 n.18 (Fed. Cir. 1994), *abrogated on other grounds*, *Bilski*, 545 F.3d at 943.

[55] *See, e.g.*, '372 patent, claims 1 & 16 and '007 patent, claim 1; *see also* '372 patent, Fig. 2; '007 patent, Fig. 2.

[56] *See supra* Section III.

[57] *See, e.g.*, *In re Ferguson*, 558 F.3d 1359,1363–65 (Fed. Cir. 2009) (holding that a marketing method is an abstract fundamental principle); *see Sikes v. McGraw-Edison Co.*, 665 F.2d 731, 733 (5th Cir. 1982) (a marketing concept is a "mere abstract idea"); *In re Merkley, Jr.*, Appeal No. 2010-009843, 2012 WL 1375535, at *7 (Pat. Trial & App. Bd. April 16, 2012); *Ultramercial*, 2013 WL 3111303, at *14 (parties and the district court agreed that an advertising method encompasses an abstract idea); *Cardpool, Inc.*, 2013 WL 245026, at *1–4 (selling method encompasses abstract idea).

> simply of public or private … relationships … or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.[58]

Similarly, pursuant to an August 2012 revision to its procedures, the Patent Office now instructs its examiners that a claim including such concepts as "marketing" or "conversing" (dialogues) is indicative of a claim "drawn to an abstract idea."[59]  The Patent Trial & Appeal Board likewise holds that claims to marketing methods encompass abstract subject matter.[60]  Thus, the claims encompass an abstract idea.

Moreover, the method claims include no "inventive concept" beyond the abstract idea. As the Supreme Court explains, "to transform an unpatentable [abstract idea] into a patent-eligible application of such [an idea], one must do more than simply state the [idea] while adding the words 'apply it.'"[61]  An invention incorporating an abstract idea must "also contain other elements or a combination of elements, sometimes referred to as an '*inventive concept,*' sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the [abstract idea] itself."[62]  None of the three method claims here requires "significantly more" than a patent on the abstract idea itself.

There is little in the claims besides the abstract idea.  Open Text might argue that the claims include computerization requirements through a "program," a "server," or the like.  The Supreme Court holds, however, that "inventive concept[s]" normally do not include "well-understood, routine, [or] conventional activity."[63]  Of course, computers, servers, and similar

---

[58] *Ferguson*, 558 F.3d at 1364.

[59] *See* MPEP, § 2106 II.B.1(d) & II.B.2  (attached as **Exhibit 5**).

[60] *See, e.g., Merkley*, 2012 WL 1375535, at *7 ("these claims recite no more than the abstract concept of marketing a service").

[61] *Mayo,* 132 S. Ct. at 1294.

[62] *Id.* (all emphasis added).

[63] *Id*. at 1294, 1298–1300.

computer functionality were well-understood and conventional when the application leading to

the patents was filed.[64]  Indeed, all concepts mentioned in the claims beyond the abstract idea are

all well-understood, routine, and conventional activity—the asserted patents themselves and

prior art cited on the face of the patents[65] describe these concepts, including computers,[66]

servers,[67] executing instructions of a program,[68] e-mail,[69] two-way communications with

customers,[70] and "alter[ing] the type of communication or substance of communications in

---

[64] *See, e.g.*, Complaint, Ex. C (U.S. Patent No. 6,223,177, discussing throughout and at length a "host server computer system," *e.g.*, at col. 1, ll. 24–38) and evidence cited in footnotes *infra*.

[65] Prior art, which provide examples of knowledge prior to the alleged inventions, are cited on the face of each patent under "References Cited."

[66] *See, e.g.*, *patents attached to the complaint:* Complaint, Ex. C (U.S. Patent No. 6,223,177) at col. 3, ll. 25–30; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 5,802,299 (attached as **Exhibit 6**), col. 3 l. 40 – col. 4, l. 22; U.S. Patent No. 6,236,977 (attached as **Exhibit 7**), col. 1, ll. 6 – col. 4, l. 59; U.S. Patent No. 6,965,920 (attached as **Exhibit 8**), col. 5, l. 3 – col 6, l. 16.

[67] *See, e.g., patents attached to the complaint:* '372 Patent, col. 14, ll. 65–67 ("data server having a standard format"); *id.* at col. 3, ll. 26–31; Complaint, Ex. C (U.S. Patent No. 6,223,177) at col. 3, ll. 25–30; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 5,802,299 (attached as **Exhibit 6**), col. 3, l. 40 – col. 5, l. 9; U.S. Patent No. 5,848,397 (**Exhibit 9**), col. 5, ll. 28–35; U.S. Patent No. 6,965,870 (**Exhibit 10**), col. 5, l. 46 – col. 6, l. 65.

[68] *See, e.g., patents attached to the complaint:* Complaint, Ex. C (U.S. Patent No. 6,223,177) at claim 1; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 5,153,905 (attached hereto as **Exhibit 11**), col. 13, l. 11 – col. 14, l. 46; U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 1, l. 3 – col. 2, l. 54; col. 6, l. 14 – col. 7, l. 29; U.S. Patent No. 6,571,238 (attached hereto as **Exhibit 13**), col. 1, l. 58 – col. 2, l. 7; U.S. Patent No. 7,277,863 (attached hereto as **Exhibit 14**), col. 1, l. 48–57; col. 5, ll. 3–12.

[69] *See, e.g.*, *patents attached to the complaint:* '372 Patent, col. 1, ll. 36–43; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:*  U.S. Patent No. 5,937,162 (attached hereto as **Exhibit 15**), col. 1, ll. 16–31 ( "Electronic mail ('e-mail') is to the 1990s what fax machines were to the 1980s"); U.S. Patent No. 5,848,397 (attached hereto as **Exhibit 9**), col. 1, ll. 21–44; U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 1, ll. 35–45; U.S. Patent No. 5,970,491 (attached hereto as **Exhibit 16**), col. 1, ll. 25–35.

[70] *See, e.g.*, *patents attached to the complaint:* '372 Patent, col. 1, ll. 34–57; Complaint, Ex. C (U.S. Patent No. 6,223,177) at col. 3, ll. 25–30; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 1, ll. 35–45; U.S. Patent No. 7,277,863 (attached hereto as **Exhibit 14**); U.S. Patent No. 5,970,491 (attached hereto as **Exhibit 16**), col. 1, ll. 25–35; U.S. Patent No. 5,937,037 (attached hereto as **Exhibit 17**), col. 1, ll. 7–14; U.S. Patent No. 6,701,322 (attached hereto as **Exhibit 18**),

accordance with a customer's wishes or responses (or lack of responses),"[71] as well-understood, conventional functionality.   The absence of detailed written description in the two patents detailing such functionality also demonstrates each as known commodities to skilled artisans (*e.g.*, the two patents do not explain how to make and use such conventional computer-related functionality, thereby assuming such knowledge is well-known).[72]   As summarized by the plurality opinion in *CLS Bank*, the Supreme Court holds that an "inventive concept" made by the inventor(s) must be "a genuine human contribution to the claimed subject matter" that is not "a trivial appendix to the underlying abstract idea."[73]   The other limitations in the three method claims are not "true human contributions to the claimed methods."   Far from indicating any advance in the subject matter, as reflected by the material associated with the complaint, the other limitations are simply known concepts used to implement the marketing idea using a computer.  Thus, the method claims include no "inventive concept."

The Supreme Court recently held that such claims are invalid.  The three method claims state an abstract idea—selecting a sub-set of people from a group with which you have communicated and then performing an action with the sub-set—and effectively say "apply it by computerizing it."  The basic marketing method steps could be performed the old-fashioned way, with snail mail or other forms of communication.  The use of program instructions, a server, a

col. 4, ll. 3–20; U.S. Patent No. 7,092,821 (attached hereto as **Exhibit 19**), col. 2, l. 8 – col. 15, l. 14.

[71] *See, e.g.*, *patents attached to the complaint:* '372 Patent, col. 1, ll. 34–57; s*ee also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 6,236,977 (attached as **Exhibit 7**), Abstract; U.S. Patent No. 5,937,037 (attached as **Exhibit 17**), col. 1, l. 7–14; U.S. Patent No. 6,701,322 (attached as **Exhibit 18**), Abstract, col. 5, l. 53 – col. 7, l. 59; U.S. Patent No. 7,092,821 (attached as **Exhibit 19**), Abstract; U.S. Patent No. 6,446,113 (attached as **Exhibit 20**), Abstract; U.S. Patent No. 6,351,745 (attached as **Exhibit 21**), col. 3, ll. 16–32.

[72] MPEP, § 2164.01 ("A patent need not teach, and preferably omits, what is well known in the art.") (attached at **Exhibit 5**).

[73] *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1283 (Fed. Cir. 2013).

computer, and other computer-related functionality simply takes the marketing idea and has a computer carry it out. Such an "apply it" approach is exactly what the Supreme Court explained in *Mayo* is insufficient to constitute patent-eligible subject matter.[74]  As the Supreme Court holds, "simply appending conventional steps, specified at a high level of generality, to … abstract ideas cannot make those … ideas patentable."[75]

"Computerizing" the idea in the three method claims does not make the claims patent-eligible under § 101.  The Supreme Court holds that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment."[76] Thus, attempting to limit this abstract marketing concept to the particular technological environment of computers does not save the claims from invalidity.  The Supreme Court and Federal Circuit hold that "computerizing" an idea, as these three method claims do, is simply attempting to limit the use of the concept to a particular technological environment.[77]    Indeed, simply "computerizing" an idea is not adding something that is "significantly more" than the idea, as is required by the Supreme Court.[78]

---

[74] *Mayo*, 132 S. Ct. at 1294.

[75] *Id.* at 1300.

[76] *Id.* at 1294 (internal quotations and citations omitted).

[77] *See Bilski*, 130 S. Ct. at 3230; *Diamond v. Diehr*, 450 U.S. 175, 191 (1981); *Fort Props.*, 671 F.3d 1317 at 1323–24 ("AML simply added a computer limitation to claims covering an abstract concept—that is, the computer limitation is simply insignificant post-solution activity.  Without more, claims 32–41 cannot qualify as patent-eligible."); *CLS Bank*, 717 F.3d at 1291 ("For all practical purposes, *every* general-purpose computer will include 'a computer,' 'a data storage unit,' and "a required of the claimed systems to carry out the otherwise abstract methods recited therein. … [S]uch limitations are not actually limiting in the sense required under § 101; they provide no significant 'inventive concept.'") (citations omitted).

[78] *See Mayo*, 132 S. Ct. at 1294 (claim incorporating an abstract idea must "also contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself"); *CardPool v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at *2–4 (N.D. Cal. Jan. 22, 2013) ("Merely using a computer to apply an abstract idea is insufficient to create patentable subject matter.").

The principles discussed in *Ultramercial* highlight the claims' invalidity. *Ultramercial* explains that a claim "covers an abstract idea" instead of a patent-eligible "application of an abstract idea" only if the claim has "limitations that *meaningfully* tie that abstract idea to an actual application of that idea through *meaningful* limitations."[79]  "[A] claim is not meaningfully limited if it merely describes an abstract idea or simply adds 'apply it.'"[80]  A claim "will not be limited meaningfully" by limitations that are "technological environment."[81]  As discussed above, the "computerization" of the abstract concept here is simply an "apply it" approach that places the concept in the technological environment of computers.  Thus, per *Ultramercial*, the claims are not a patent-eligible "application of an abstract idea."

Since all three independent method claims encompass an abstract concept and require no "inventive concept" beyond the abstract concept, the claims are invalid as a matter of law.

**B.    THE INDEPENDENT METHOD CLAIMS OF BOTH PATENTS FAIL THE MACHINE-OR-TRANSFORMATION TEST.**

Since the independent method claims fail the Supreme Court's "inventive concept" test, the claims are invalid as a matter of law under § 101.  This is confirmed by the "machine-or-transformation test" stated by the Federal Circuit in *Bilski.*  There, the court held that a claimed process may satisfy § 101 if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing."[82]  It further held that, besides such a tie or transform, the test requires that "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility."[83]  The Supreme Court holds that satisfying this test does not necessarily mean the patent claim is valid,

---

[79] *Ultramercial*, 2013 WL 3111303, at *9 (emphasis added)
[80] *Id.* at *10 (citing *Mayo*, 132 S. Ct. at 1294, 1297).
[81] *Ultramercial*, 2013 WL 3111303, at *10.
[82] *In re Bilski*, 545 F.3d  943, 954 (Fed. Cir. 2008) (*en banc*) (citations omitted), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010).
[83] *Id.* at 961; *see, e.g.*, *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1332–33 (Fed. Cir. 2010).

but that the test can be an "important clue" in the analysis.[84]  Here, this important clue confirms the result of the "inventive concept" analysis:  the claims are invalid.

None of the three independent method claims are "tied to a particular machine or apparatus."  There is nothing in the claims of the '372 patent that is arguably a "particular machine."  Open Text may argue that the claim processes are "tied to a particular machine" by asserting that the '372 patent claims imply the use of a computer and by pointing to the configured server of the '007 patent claim.  The claimed methods, however, are not "tied to a particular machine" for at least two independent reasons.

*First,* such an argument indicates that the claimed process is, at best, *aided by* or *uses* a computer or server.  The Federal Circuit, however, holds that a claimed process that is required by the claim to be aided or used by a computer is not a claimed process that is "tied to a particular machine."[85]  *Second,* the Federal Circuit holds that "[i]n order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed."[86]  Here, neither any alleged computer of the '372 patent nor the server of the '007 patent "play a significant part in permitting the claimed method to be performed."  The fact that the body of the claims of the '372 patent does not explicitly mention a computer belies any argument that it plays a significant part.  Similarly, since claim 1 of the two patents claim the same basic method and no "server" is mentioned in claim 1 of the '372 patent, a "server" is obviously not a "significant part in permitting the claimed method to be performed." Also, claim 18 of the '007 patent, which depends from claim 1, demonstrates that a server is not required to play a significant part in even the minor function

---

[84] *Bilski*, 130 S. Ct. at 3227.
[85] *See, e.g., Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("computer aided"); *Fort Properties*, 671 F.3d at 1323 (used).
[86] *SiRF Tech.*, 601 F.3d at 1333.

noted in claim 1 of sending a communication to the first participants.  Claim 18 specifies that it is the "communications channel" rather than the "server" that sends the communication to the participants.[87]

Likewise, there is nothing in the three independent method claims that require that claimed process to "transform a particular article into a different state or thing."[88]  The Supreme Court provides as an example of such a transformation:  "a process of curing synthetic rubber" including, in part, "the use of the formula and a digital computer," which "transform[s] or reduc[es] an article to a different state or thing."[89]  The method claims here, on the other hand, involve "obtaining" and "assembling" participants and "executing" instructions.[90]  No transformation is found in the claims, much less one of "a particular article into a different state or thing."

Indeed, the modified analysis presented by the minority in *CLS Bank* explained that "[t]he key to this inquiry is whether the claims tie the otherwise abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something; if so, they likely will be patent eligible, unlike claims directed to *nothing more than the idea* of doing that thing on a computer."[91]  Here, there is no such "specific way" or "specific computer" to which the abstract idea is tied.  The claims simply "computerize" the marketing idea, at best using conventional computer functionality to implement the idea, and are thereby invalid under § 101.

---

[87] *See* '007 patent, col. 17, ll. 28–34.

[88] *Bilski*, 545 F.3d at 954.

[89] *Diamond v. Diehr*, 450 U.S. 175–76, 187–93 (1981).

[90] *See, e.g.*, '372 patent, Claim 1 ("… *obtaining* a set of first corresponding participants; *executing* a first instruction of a first program …"); '372 patent, Claim 16 ("… *assembling* a set of first corresponding participants …"); '007 patent, Claim 1 ("…*obtaining* a set of first corresponding participants at a server configured with a first program; *executing* a first instruction of the first program …") (all emphasis added).

[91] *CLS Bank*, 717 F.3d at 1302 (Rader, J., *et al.*, concurring-part, dissenting-in-part).

**C.      THE INDEPENDENT NON-METHOD CLAIMS OF THE PATENTS ARE INVALID FOR THE SAME REASONS THAT THE INDEPENDENT METHOD CLAIMS ARE INVALID.**

The two non-method claims of the '372 patent (independent claims 22 and 37) are invalid for the same reasons that the method claims of the '372 patent are invalid.  The two claims are "computer readable storage medium" claims.  In *Cybersource*, the Federal Circuit held that when a claim "recites nothing more than a computer readable medium containing program instructions for executing" an abstract method, it does not claim patent-eligible subject matter under § 101— such a claim is likewise invalid under § 101.[92]  Such claims "are merely method claims in the guise of a device and thus do not overcome the Supreme Court's warning to avoid permitting a 'competent draftsman' to endow abstract claims with patent-eligible status."[93]

The non-method claims of the '372 patent are invalid under these principles.  Here, although the computer storage medium and system claims of the patents contain preamble language that technically renders them non-method claims, the substantive body of those claims are directed to the steps of the method claims.  The body of claim 22 of the '372 patent is identical to claim 1 of the '372 patent;[94]  the preamble of claim 22 claims "[a] computer readable storage medium for facilitating a network based dialog, comprising instructions translatable for" the steps of claim 1.  Likewise, the body of claim 37 of the '372 patent is identical to claim 16 of the '372 patent;[95] the preamble of Claim 37 claims a storage medium "comprising instructions translatable for" the steps of claim 16.  Thus, under *Cybersource*, the non-method claims of the '372 patent are invalid for the same reasons the method claims are invalid.[96]

---

[92] *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).
[93] *CLS Bank*, 717 F.3d at 1288.
[94] *Compare* '372 patent, Claim 1 *with* '372 patent, Claim 22.
[95] *Compare* '372 patent, Claim 16 *with* '372 patent, Claim 37.
[96] *CyberSource*, 654 F.3d at 1374; *see CLS Bank*, 717 F.3d at 1288–89.

Likewise, the non-method claims of the '007 patent are invalid under these principles. Claim 21 of the '007 patent claims a "computer readable medium storing instructions executable to" carry out most steps of claim 1 of the '007 patent. Claim 26 includes a "tangible non-transitory storage medium storing computer program instructions executable to perform a method comprising" most steps of claim 1 of the '007 patent.

Open Text may argue that recitation of a "data storage location," "dialog computer or engine," and/or "communications channel" in claims 21 and 26 of the '007 patent saves those claims. The Supreme Court holds, however, that "inventive concept[s]" normally do not include "well-understood, routine, [or] conventional activity."[97] Of course, data storage, computers, and communications channels were well-understood and conventional when the application leading to the patent was filed.[98] The patents themselves and prior art cited on the face of the patent describe them.[99] Likewise, such recitations fail the machine-or-transformation test. As discussed above, a claimed process that is required by the claim to be aided or used by a computer is not a claimed process that is "tied to a particular machine."[100] Such recitations merely express computerization to aid or be used by the abstract concept. Placing a method into a particular technological environment cannot save the claim under § 101.[101]

Also, "[i]n order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed."[102]

---

[97] *Mayo*, 132 S. Ct. at 1289, 1293–94, 1299–1300.

[98] *See supra* nn. 66–71.

[99] *See id.*

[100] *See, e.g., Dealertrack*, 674 F.3d at 1334 ("computer aided"); *Fort Properties*, 671 F.3d at 1323 (used).

[101] *Mayo*, 132 S. Ct. at 1297 (the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'") (quoting *Bilski* and *Diehr*).

[102] *See, e.g.*, *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332–33 (Fed. Cir. 2010).

Here, such recitations do not play a significant part—indeed, these recitations are not mentioned in claim 1 of the '007 patent, indicating they do not play a significant part in permitting the method (as the processes expressed in claims 1, 21, and 26 are close to identical). Likewise, a review of the claims indicates the roles of such recitations are minimal and insignificant. The "data storage location" reference is *per se* insignificant in § 101 analysis. The Federal Circuit holds that "data storage" is insignificant, post-solution activity.[103] The "dialog computer" expressed role is to "prompt" the communications channel to communicate, which constitutes a standard, insignificant role of a computer, which is given no weight in § 101 analysis.[104] Similarly, claim 26 involves the "dialog engine" interfacing with a data storage location; again, a standard, insignificant role of a computer, which is given no weight in § 101 analysis.[105]

---

[103] *Bilski*, 130 S. Ct. at 3230 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to … adding 'insignificant postsolution activity.'"); *see, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373–77 (Fed. Cir. 2011) (discussing patent ineligibility of "data storage" and other *Beauregard* claims reciting nothing more than an otherwise patent ineligible method or abstract idea); *see also CLS Bank Int'l*, 717 F.3d at 1287–92 ("computer program product," "data processing system"); *Fort Props.*, 671 F.3d at 1323–24 ("AML simply added a computer limitation to claims covering an abstract concept— that is, the computer limitation is simply insignificant post-solution activity. Without more, claims 32–41 cannot qualify as patent-eligible.") (internal citations omitted).

[104] *See id.*; *Mayo*, 132 S. Ct. at 1294, 1298–1300 ("inventive concept[s]" normally do not include "well-understood, routine, [or] conventional activity"); *SiRF Tech.,* 601 F.3d at 1333 ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations."); *In re Grams*, 888 F.2d 838, 840–41 (Fed. Cir. 1989).

[105] *See id.*

**D.     NO DEPENDENT CLAIM OF EITHER PATENT ADDS ANY LIMITATION THAT IS MATERIAL TO THE § 101 ANALYSIS OR THAT SAVES THE CLAIMS FROM INVALIDITY UNDER § 101.**

None of the 64 dependent claims of the two patents limit their scope in a way that saves the claim from invalidity.[106]  Many of the dependent claims in the '007 patent are identical to dependent claims in the '372 patent.[107]  None of them include an "inventive concept," a tie to a particular machine, or a transformation of a particular article into a different state or thing.

For example, claim 2 (identical in each patent) provides the first event is "an interaction with the first communication."  Claim 3 (also identical in each patent) provides the "first communication" is "an email."  Claim 4 (also identical in each patent) provides the interaction is "clicking on a link within an email."  These were all very well-known, basic concepts at the time of application.[108]   None are limitations to a particular machine or a transformation.  Thus, they cannot save the dependent claims from invalidity under § 101.  The other dependent claims in the patents are either identical in substance to these claims or similarly add no "inventive concept" or particular machine or transformation.

Open Text may again argue that the presence of "a storage device," "a database storing a table," "dialog engine," or "email server" in certain dependent claims of the '372 patent saves those claims from invalidity.  The Supreme Court holds, however, that "inventive concept[s]" generally do not include "well-understood, routine, [or] conventional activity."[109]   Data storage,[110] databases,[111] computer engines,[112] and e-mail servers[113] were well-understood and

---

[106] The dependent claims of the '372 patent are claims 2–15, 17–21, 23–36, and 38–42, and the dependent claims of the '007 patent are 2–20, 22–25, and 27–29.

[107] *Compare, e.g.*, '372 Patent, claims 2–12 *with* '007 Patent, claims 2–12.

[108] *See, e.g.*, *supra* n. 69.

[109] *Mayo*, 132 S. Ct. at 1289, 1293–94, 1297, 1299–1300.

[110] *See, e.g., patents attached to the complaint*: Complaint, Ex. C (U.S. Patent No. 6,223,177) at claims 1, 2; *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S.

conventional when the application was filed.  The patents themselves and prior art cited on the face of the patents describe them. [114]  Likewise, such recitations fail the machine-or-transformation test.  Indeed, the Supreme Court holds that placement of a method into a

_____

Patent No. 5,848,397 (attached hereto as **Exhibit 9**), col. 6, ll. 36–48 ("database management system 106"); U.S. Patent No. 6,076,101 (attached hereto as **Exhibit 22**), col. 4, ll. 1–31 ("data storage unit 37"); U.S. Patent No. 4,625,081 (attached hereto as **Exhibit 23**), col. 5, ll. 39–56 ("data store 104").

[111] *See, e.g., patents attached to the complaint*: Complaint, Ex. C (U.S. Patent No. 6,223,177)at claims 6, 7, 11 ("address database" and "contact database"); *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 3, ll. 1–52; claim 1 (describing a "database of business rules"); U.S. Patent No. 6,571,238 (attached hereto as **Exhibit 13**), col. 1, l. 58 – col. 2, l. 7 (describing known databases for storing messages); U.S. Patent No. 5,937,162 (attached hereto as **Exhibit 15**), col. 6, ll. 24–32; Fig. 2 ("plurality of databases, including a customer database 200, source information database 202, portfolio value database 204, name and symbol database 206, and message database 208"); U.S. Patent No. 5,970,491 (attached hereto as **Exhibit 16**), col. 4, ll. 29–34 ("Database Management System"); U.S. Patent No. 6,351,745 (attached hereto as **Exhibit 21**), col. 3, ll. 15–52 (describing various databases).

[112] *See, e.g., patents attached to the complaint*: '372 patent, col. 2, l. 60 – col. 3, l. 3 (describing a "dialogue engine 14" that "runs on an Intel 700 MHz or higher processor, running Windows NT or 2000"); s*ee also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 6,236,977 (attached hereto as **Exhibit 7**), col. 5, ll. 57–67; claim 1 (describing a computer-implemented marketing system comprising various "engines"); U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 3, ll. 21–27 ("a receipt engine, a database of business rules, a rule engine, and a distribution engine"); U.S. Patent No. 6,571,238 (attached hereto as **Exhibit 13**), col. 3, ll. 66 – col. 4, 28 (a "relevancy engine to generate a relevancy score for an incoming message"); U.S. Patent No. 6,701,322 (attached hereto as **Exhibit 18**), col. 5, ll. 35–52 ("database engines such as those marketed by Access, SQL and Oracle"); U.S. Patent No. 6,446,113 (attached hereto as **Exhibit 20**), col. 3, l. 48 – col. 5, l. 4 (describing a "data-change engine for maintaining data in preferably non-volatile, persistent memory pursuant to a data model").

[113] *See, e.g., patents attached to the complaint*: '372 Patent, col. 3, ll. 26–31 ("e-mail server 58"); *see also, e.g., patents cited as prior art to the '372 patent and/or '007 patent:* U.S. Patent No. 5,848,397 (attached hereto as **Exhibit 9**), claim 41 ("a plurality of e-mail servers"); U.S. Patent No. 6,073,142 (attached hereto as **Exhibit 12**), col. 1, ll. 15–34 ("e-mail system comprises … mail servers"); U.S. Patent No. 6,076,101 (attached hereto as **Exhibit 22**), col. 2, ll. 53–60; Fig. 2 (describing "an electronic mail delivery server"); U.S. Patent No. 6,332,164 (attached hereto as **Exhibit 24**), claim 11 (describing a "mail server"); U.S. Patent No. 6,854,007 (attached hereto as **Exhibit 25**), col. 4, ll. 29–27; Fig. 1 (describing a "server computer system 100" "used for the transmission of [] electronic messages").

[114] *See id.*

28

particular technological environment—like the noted limitations do relative to storing data and communicating data related to the abstract concept—cannot save the claim under § 101.[115]

Five of ten Federal Circuit judges considering a recent case *en banc* endorsed a straightforward application of the Supreme Court's approach to § 101 to computer-related claims. In that case, *CLS Bank*, the five judges found claims involving a method or computer-readable medium invalid under § 101.[116] Two other of the ten judges endorsed a modified approach but found the claims involving a method or a computer-readable medium invalid even under their approach (thus a majority—seven—found such claims invalid under § 101).[117] The two groups of judges disagreed as to the validity of claims that did not involve a method or a storage medium, but ***all*** of the claims at issue in Defendants' motion are either a method or involve a storage medium, just like those that the seven judges found invalid under § 101.

Formal claim construction procedures are not necessary here. That the claims encompass an abstract marketing-method is clear. That the computer-related functionality in the claims is conventional is likewise clear—they are well known and the patents attached to the Complaint confirm it. The Court does not need to construe what each term and phrase in the 71 patent claims in the patents mean in formal claim construction in order to see (1) the presence of an abstract concept, (2) the lack of an additional "inventive concept" in the claims, and (3) that the Supreme Court's and Federal Circuit's standards clarified after these patents were allowed clearly show that the claims are invalid.

---

[115] *Mayo*, 132 S. Ct. at 1297 (the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'") (quoting *Bilski* and *Diehr*).
[116] *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1274, 1285–89 (Fed. Cir. 2013).
[117] *Id.* at 1311–13.

## V.   CONCLUSION

The claims of the '372 patent and the '007 patent encompass a basic marketing method that has, at best, been "computerized" via conventional implementation on a computer, and no "inventive concept" has been added to the claims.  Thus, the claims are plainly invalid under § 101 as a matter of law under the Supreme Court's, Federal Circuit's, and Patent Office's recent clarifications.  The claims fail the "machine-or-transformation" test as well, and such a failure is a strong signal of their invalidity.  Accordingly, the Court should take this opportunity to simplify this matter and focus the parties' and the Court's energy and resources by granting Defendants' motion to dismiss the first and second causes of action for failure to state a claim upon which relief may be granted.

Dated:  August 1, 2013                                     Respectfully submitted,


                                                             */s/ Stephen E. Noona*
                                                             Stephen E. Noona
                                                             Virginia State Bar No. 25367
                                                             KAUFMAN & CANOLES, P.C.
                                                             150 W. Main Street, Suite 2100
                                                             Norfolk, VA  23510
                                                             Telephone:  757-624-3239
                                                             Facsimile:  757-624-3169
                                                             senoona@kaufcan.com

                                                             William H. Boice, Esq. *(pro hac vice)*
                                                             Audra A. Dial *(pro hac vice)*
                                                             Michael J. Turton *(pro hac vice)*
                                                             KILPATRICK TOWNSEND & STOCKTON LLP
                                                             Suite 2800, 1100 Peachtree Street NE
                                                             Atlanta, GA   30309
                                                             Telephone:  404-815-6464
                                                             Facsimile:  404-541-3134
                                                             bboice@kilpatricktownsend.com
                                                             adial@kilpatricktownsend.com
                                                             mturton@kilpatricktownsend.com

                                                             Steven Gardner *(pro hac vice* to be filed)

30

KILPATRICK TOWNSEND & STOCKTON LLP
1001 W. Fourth Street
Winston-Salem, NC 27101
Telephone:  336-607-7300
Facsimile:   336-607-7500
sgardner@kilpatricktownsend.com

*Counsel for Defendants Alfresco Software Ltd.,
Alfresco Software, Inc. and Carahsoft
Technology Corporation*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory N. Stillman
Virginia State Bar No. 14308
Brent L. Van Norman
Virginia State Bar No. 45956
HUNTON & WILLIAMS LLP
500 East Main Street, Suite 1000
Norfolk, VA  23510
Telephone:  (757) 640-5300
Facsimile:  (757) 65-7720
gstillman@hunton.com
bvannorman@hunton.com

Brian J. Eutermoser (*pro hac vice*)
Britton F. Davis (*pro hac vice*)
Peter J. Sauer (*pro hac vice*)
Sara J. Radke (*pro hac vice*)
Sarah J. Guske (*pro hac vice*)
Wayne O. Stacy (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021
Telephone:  720-566-4000
Facsimile:  720-566-4099
beutermoser@cooley.com
bdavis@cooley.com
psauer@cooley.com
sradke@cooley.com
sguske@cooley.com
wstacy@cooley.com

Christopher C. Campbell
COOLEY LLP
11951 Freedom Drive
Reston, VA  20190
Telephone:  703-456-8000
Facsimile:  703-456-8100
ccampbell@cooley.com

Thomas J. Friel, Jr. (*pro hac vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111
Telephone:  415-693-2000
Facsimile:  415-693-2222
tfriel@cooley.com

*Counsel for Plaintiff Open Text, S.A.*

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

12558037v1