**Pages 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

OPEN TEXT, S.A.,                     )
                                     )
          Plaintiff,                 )
                                     ) NO. C 13-04910 JD
   vs.                               )
                                     )
BOX, INC. and CARAHSOFT              )
TECHNOLOGY CORPORATION,              )
                                     ) San Francisco, California
          Defendants.               ) Wednesday, August 20, 2014
                                     ) 9:31 a.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
**For Plaintiff**          Cooley LLP
**OpenText, S.A.:**        101 California Street, 5th Floor
                           San Francisco, CA  94111-5800
                           (415) 693-2000
                           (415) 693-2222 (fax)
                    BY:  **THOMAS J. FRIEL**

**For Plaintiff**          COOLEY, LLP
**OpenText, S.A.:**        380 Interlocken Crescent, Suite 900
                           Broomfield, CO  80021
                           (720) 566-4000
                           (720) 566-4099 (fax)
                    BY:  **SARAH JOANN GUSKE**

**For Defendant**          Kilpatrick Townsend and Stockton LLP
**Alfresco Software,**     Two Embarcadero, 8th Floor
**Ltd.:**                  San Francisco, CA  94111
                           (415) 576-0200
                           (415) 576-0300 (fax)
                    BY:  **A. JAMES ISBESTER**

Reported By:  Lydia Zinn, CSR No. 9223, Official Reporter

**APPEARANCES CONTINUED**

**For Defendant**      Kilpatrick Townsend and Stockton LLP
**Alfresco Software,**    1100 Peachtree Street, NE
**Ltd.:**                 Suite 2800
                        Atlanta, GA  30309
                        (404) 815-6500
              BY:  **JOSHUA HAMILTON LEE**
                    **MICHAEL JOHN TURTON**

**For Defendants**       Reed Smith LLP
**Carahsoft**           101 Second Street, Suite 1800
**Technology Corp.;**    San Francisco, CA  94105
**Box, Inc.:**          (415) 543-8700
                        (415) 391-2869 (fax)
              BY:  **JOHN P. BOVICH**
                    **JONAH DYLAN MITCHELL**

**THE CLERK:**  Calling Civil 13-4843, *OpenText S.A. versus Alfresco Software Limited, et al*.  Counsel, please come forward and state your appearances for the Court.

**MR. FRIEL:**  Good morning, Your Honor, to the Court. Tom Friel.  With me, Sarah Guske, from the Cooley firm, representing the plaintiff, OpenText S.A.

**THE COURT:**  Good morning.

**MR. FRIEL:**  Good morning.

**MR. ISBESTER:**  Good morning, Your Honor, James Isbester, from Kilpatrick Townsend, representing Alfresco.  And with me are my partner, Michael Turton, and colleague, Josh Lee.

**THE COURT:**  All right.  Good morning.  We are here on your --

**THE CLERK:**  Just a minute, Your Honor.

**MR. BOVICH:**  Sorry, Your Honor.  John Bovich and Jonah Mitchell.  We're here for Box.

**THE COURT:**  Are you --

**MR. BOVICH:**  We did not move, but we're here.

**THE COURT:**  Oh, okay.  All right.

We are here on Alfresco's motion to dismiss.

This thing has been kicking around for a year, with months of case settlements at the Supreme Court; months of super-jumbo briefs from the Eastern District of Virginia; and the relatively late-breaking statement by the plaintiffs that, in

fact, only two of the claims in the patents --

Come on up, Mr. Isbester.

-- are at issue.  So the plaintiffs now say that only claim 38 in the '372 patent, and claim 22 in the '007 patent are on the table.

MR. ISBESTER:  Your Honor --

THE COURT:  So where --

Let me ask the question first.

Where does that leave your motion?

MR. ISBESTER:  My highest and best use, Your Honor, is to introduce the colleagues who are best suited to address that, so Mr. Turton will be responding.

THE COURT:  You have an MC?

MR. TURTON:  Good morning, Your Honor.

THE COURT:  I'm sorry.  Mr. --

MR. TURTON:  Mr. Turton.

THE COURT:  Turton.  All right.  Go ahead.

MR. TURTON:  So the specific claims that are now asserted -- claim 38 and claim 22 -- were addressed in our briefing.  And we --

THE COURT:  Where?

MR. TURTON:  We addressed -- we addressed it by addressing the independent claims upon which those claims depend, starting with the method claims.  So I'll turn you to our brief.  On page 11, we start addressing the independent

claim -- independent method claims upon -- so we address those independent method claims, and discuss the abstract idea that those claims are directed to.

And then we address the independent computer-readable-medium claims and the system claims, beginning -- well, we mention them on page 14 and 15, in that they don't add anything, other than the abstract idea, and these general computer -- generic computer concepts on page 14 and 15.

And then on page 24 through 26, we address the independent computer-readable-medium claims and system claims upon which claims 38 and 22 pend.

And then we grouped the dependent claims by subject matter: E-mail, which -- which is addressed in claim 22, and then website, which is addressed in claim 38.  And we specifically addressed the e-mail, e-mail server issue on page 18 of the brief -- of our opening brief.  And then page 27 also addressed e-mail, e-mail server.  And we addressed website in our responsive brief on pages 15 through 16.

**THE COURT:**  All right.  Let me ask you a question. So when the Federal Circuit says, in *Ultramercial*, the version two, that you, the accused infringer, are required to establish that the only plausible reading of the claims is that, by clear and convincing evidence, they cover ineligible subject matter, what do you think the Circuit means by "clear

and convincing evidence"?

MR. TURTON:  Well, clear and convincing evidence is -- is obviously an evidentiary standard.  101 invalidity by claims -- invalidity under 101 is a question of law.  And so --

THE COURT:  So what's clear and convincing in that?  What does that mean in that context?

Look.  All I have to work with --

MR. TURTON:  Right.

THE COURT:  -- is the brief and the patent.

MR. TURTON:  Okay.  Right.

THE COURT:  Okay.  So what's clear and convincing in that context?

MR. TURTON:  I think looking at it in the light of *Twombly*, I think there's no plausible reading that these claims are valid.  And --

THE COURT:  Well, what's *Twombly*?  The Circuit says you have the burden of showing, by clear and convincing evidence.  And what do you understand that to mean?  It's got to mean something.

MR. TURTON:  Right.  Well, in this specific instance -- e-mail -- the issue is whether e-mail and whether websites with some inventive concept.  So we have to show that e-mail and websites are not an inventive concept.  E-mail was known in 2000, when these patents were filed.  There's no dispute about that.  Websites were known in 2000, when these

patents were filed.  So there is no dispute on the underlying issue that -- that e-mail was known; that websites were known. Thus, by clear and convincing evidence, we show that the claims are invalid.

THE COURT:  Well, you're just slapping on "clear and convincing."  What does it mean?  What's the quantum of proof? Look.  I'm asking you to give me some guidance, because I'm baffled by the phrase.  I don't get it.  I don't see how this applies in a 12(b) context; but I'm giving you an opportunity to tell me what your view is.  So your view is if it references what the Supreme Court might call "existing generic technology," then that's clear and convincing evidence?

I don't think that's right, but do you have anything else to add on to that?

It's not a right, in the sense that you're just kind of ducking the question, but let me ask you this.  Is there any case you know of that says, "Here is what the Federal Circuit meant by 'clear and convincing' in this context"?

MR. TURTON:  In this specific 12(b)(6) context, no, I don't know.

THE COURT:  All right.  Let me turn to your opponent. So tell me.  What does it mean in your view:  Clear and convincing?

MS. GUSKE:  Sarah Guske, for plaintiffs, Your Honor. Clear and convincing evidence in this context renders this

whole process problematic, which is why it's not often done in a 12(b)(6) context.  The things that we would have expected to see in plaintiff's -- or excuse me -- defendant's briefing would have been some sort of evidence that these specific limitations and the claims at issue were not an inventive concept; that they were some sort of abstract idea.  I would think expert reports or declarations would have done that; some other type of extrinsic evidence; things that we see, maybe, in the term context of claim construction.

THE COURT:  What case says that?

MS. GUSKE:  Ah, I'm not aware of a case law, but if you look -- or a case law that specifically says that; but if you look at *Ultramercial*, they walk through the main things.  I think it's in the first couple of pages in our brief, Your Honor -- our opposition brief.

THE COURT:  Okay, but what case says that you need to have extrinsic evidence for clear and convincing?

MS. GUSKE:  Well, there has to be some kind of evidence.  So whether it's intrinsic or extrinsic --

THE COURT:  No.  My question is:  What case says you have to have extrinsic evidence for clear and convincing?  Do you know of one?

MS. GUSKE:  No.

THE COURT:  Okay.  Do you know of any cases construing "clear and convincing" in this context?

**MS. GUSKE:**  No.

**THE COURT:**  All right.  Let me ask you.  I just want you to step back now.  And just -- you agree this is an abstract idea in the patent?

**MS. GUSKE:**  Not as drafted, no, Your Honor.

**THE COURT:**  Well, you're trying to tack on the fact that you're tying it to a certain type of technology?

**MS. GUSKE:**  Yes.

**THE COURT:**  All right, but if you're looking at it in a two-step process that the Supreme Court says, in *Alice Corp.*, you must do, Step One is:  Is this a law of nature, or an abstract idea, or the third category they had?

This falls in the abstract-idea category; doesn't it?

**MS. GUSKE:**  According to plaintiffs -- or excuse me.  According to defendants.

**THE COURT:**  I'm asking you.

**MS. GUSKE:**  No, I don't agree that it does.

**THE COURT:**  Why don't you agree with that?

**MS. GUSKE:**  If you -- *Alice* -- the Supreme Court in *Alice* also tells us how you're supposed to look at claims.  And it it's element-by-elements basis, and then the claim as a whole, and an operative format.

So if you look at the claims -- and I think you start with the '007 patent, claim 22, which is a dependent claim on 21 -- and you look at the sorts of things that are being claimed

here, this is not an abstract idea.  It's not a computer for executing certain steps.  This is a specific computer that's executing delineated instruction sets to achieve a specific purpose.

**THE COURT:**  Well, if you take the '372 patent, the first claim is a method for facilitating a network-based dialogue.

**MS. GUSKE:**  You're looking at claim 1 of --

**THE COURT:**  Yes.  On page 16.  That's an abstract idea.  Right?

**MS. GUSKE:**  I would disagree, because executing -- if you continue to read all of the elements, it's executing a first instruction of a first program.

**THE COURT:**  But what does it -- what's so special about the ex -- you're running it on computers.  I think there are specifications in here about Intel chipsets, but you're running it on things anybody can buy anywhere and make happen.

You're talking -- this patent -- this idea -- let's just talk practically -- is a way to communicate with customers about their purchasing decision.  Right?

**MS. GUSKE:**  If you.

**THE COURT:**  You buy something.  And this patent supposedly tells you, "Here's how you get some feedback from the customers about their experience."

**MS. GUSKE:**  The disclosed embodiment, yes.

The claims don't.

**THE COURT:**  No.  I'm asking as an idea; as, "Hey here's my invention."

The invention is:  Here's a way you can interact with your customers online after they buy something.  Right?

**MS. GUSKE:**  Yes.  In terms of the specification, I agree.

**THE COURT:**  Yeah.  Okay.

So what's the extra plus factor here that makes this, you know, inventive, or something that's actually patentable?  Because it looks to me like a pretty basic idea that falls clearly in the abstract-idea concept.  And when I look at the rest of the patent, it talks about using e-mail, and Windows computers, and things I could go down to Fry's and buy right now.  There isn't anything special I've seen.

What's the kicker?  What's the inventive concept that makes this extra special, under *Mayo* and under *Alice Corp.*, such that you can say any of this is patentable?

**MS. GUSKE:**  So I -- if I'm understanding, I think you're asking -- there's the case law that wants you to show that it's a technical Seclusion to a technical problem.  And in this particular case and these claims, the problem that is being solved is the ability to track network activities by users in order to send certain communications to those users.

And the fact that now you can go and buy an e-mail server

at Fry's is not the right time frame to be looking at.  So you have to look at it as:  When this patent was filed.

This sort of "work-flow management," as it's called in certain industries, like a project-management idea, is not something that was readily available and known at the time; and I don't think that the defendants have done anything to show that it was.

THE COURT:  Well, if you look at page 2 of the '372 patent, under "Detailed Description," it says here's what you need:  You need a computer running Windows NT.

I mean, even when this patent was filed, that wasn't the NASA-level technology that only five people could get.  I mean, anybody in the world could get that.  Right?

MS. GUSKE:  Right.

THE COURT:  You probably had it at your law firm.  So where is the -- what's inventive about the idea that your client has a concept that you're going to interact with people online in a dialogue fashion?  What makes that patent eligible?

MS. GUSKE:  Well, in terms of the two Asserted Claims, Your Honor, for claim 38 of the '372 patent, it's that software that has the instruction sets that are being executed to perform this specific steps.

In terms of claim 22 of the '007 patent, it's the system that's claimed, with the components that communicate any specific way, if you read through the various steps.  And there

are several steps in those claims, in addition to the software being on it.

THE COURT:  So *Alice* says repeatedly, "The introduction of a computer into the claim does not alter the analysis, and it's not patentable."  Okay?  It's just simply saying that computer implementation does not supply the necessary inventive concept.  If you can carry it out on the computers that are currently being used, that isn't enough to make it an inventive concept.

So give me your -- just lay it out for me.  No talking claims.  Just tell me, as a person, "Here's the extra-special kicker that makes this thing an inventive concept."

MS. GUSKE:  So the claims that *Alice* and the Court in *Alice* are worried about are when it just says, almost literally, "executed on a computer."

THE COURT:  How is this different?

MS. GUSKE:  This is different because the specific -- there are specific structures that are disclosed in the claims.  And --

THE COURT:  All right.  Give me some cites.

MS. GUSKE:  Sure.  So the '007 patent.

THE COURT:  Can we do the '372?  I just happen to have it here.  If you want to -- they're the same, anyway; aren't they, basically?

MS. GUSKE:  They're -- one is a continuation of the

other, yes.

THE COURT:  All right.

MS. GUSKE:  So if we go to -- let's see, here.

THE COURT:  Well, you're sort of living or dying on claim 38.  Right?

MS. GUSKE:  Yes.  Let's look at claim 38.

THE COURT:  So you want to look at claim 38?

MS. GUSKE:  Sure.

THE COURT:  All right.

MS. GUSKE:  So first of all, on claim 38, the preamble -- I'm looking at column 18 on the '372 patent, down towards the bottom, where claim 37 begins.  That's the independent claim.

The preamble, itself, defines -- says "a computer-readable storage medium."  I think defendants have forgotten that particular piece of information.  This is not just a computer. This is claiming a specific software configuration.

And then, moving to the first limitation, which has several steps embedded within it, there's a first set of -- I'm sorry -- first instruction in the program that is executed in order to do the specific step of communicating with a first group of users.  It's an instruction set.

THE COURT:  Let me do this.  So claim 38 says the computer-readable storage medium of claim 37, wherein the first specified event is an interaction with a website?

**MS. GUSKE:**  Yes.

**THE COURT:**  Okay.  So where is the -- how is that anything, other than an ordinary computer implementation on existing technology that has nothing special about it?

**MS. GUSKE:**  The interaction with a website is a -- something that must occur on a network in order for this whole claim to be practiced.  That website is a critical component and the action on the website is a critical component of this claim.  And it is used within the instruction set that's claimed in independent claim 37 in order to effect the algorithm that's being disclosed there.  It's not just any interaction.

I think the concern under *Alice* is preëmption of any method of performing a certain idea.

**THE COURT:**  Yeah, but I'm kind of worried about that here.  I mean, you know, the patent says in claim 1, as I read it, this is a patent on interactive dialogues on the Internet. What is an interactive dialogue on the Internet?

Let me ask you this.  What practice can somebody do that gets feedback from customers that, in your view, would not infringe this patent?

**MS. GUSKE:**  There are other ways of communicating with the groups of users, whether it's specifically with just e-mail communications, or other types of technology like that. It's not something that would necessarily be an interaction

through a website.

THE COURT:  Yeah, but this flowchart in the patent says this is a concept where a merchant sends an e-mail saying, "How was your order experience?"

I mean, that's what they want to patent:  That concept of sending a follow-up e-mail saying, "How was your order experience?"  And then, if the person says "Good," they get E-mail A, saying, "Thanks."  And if the person says "Bad," they get E-mail B, saying, "May we call you?"  I mean, how is that not occupying a vast swath of very conventional, Internet Web-based communications with clients or customers?

MS. GUSKE:  Tracking a large group of users and their individual activities over varying amounts of time is a nontrivial task.  To have invented the concept of setting up a system that would allow a computer to track this in an intelligent fashion, and then act on it by sending out reminder messages -- that sort of thing -- it's nontrivial.

THE COURT:  Well, I just want you to tell me with a level of detail -- okay? -- why this goes forward, after *Alice Corp.*, *Mayo*, and *Bilsky*.  Just tell me.  Why do your claims go forward on these patents after those three cases?

MS. GUSKE:  After *Bilsky*, *Alice*, and *Mayo*, I think *Mayo* and *Bilsky* were around when the original drafting of these briefs went in.  *Alice* did nothing to change it.  It reaffirmed the *Mayo* structure.

So underneath all of that, that means that the -- these claims are tied to a specific method of doing something. There is no risk of preëmption when we're looking -- and I'm talking specifically right now about claim 38 of the '372, and 22 of the '007 patent. There's no risk that -- of the preëmption issue, which is the primary concern. *Alice* tells us that's the primary concern.

And that's because these claims have a specific claim instruction set in the context of claim 38.

And if you look at claim 22 of the '007 patent, there's a specific structure; a specific communication path in addition to the specific instruction set.

**THE COURT:** So where do I find the specific claim instructions that you're talking about? Where is that?

**MS. GUSKE:** I'm sorry. Can you repeat that?

**THE COURT:** Where do I find the specific claim instruction set you're talking about?

**MS. GUSKE:** So in the '007 patent, claim 21, which is the independent claim, it refers to a first instruction of a program. So it's the corresponding participants. And I'm on column 17, towards the bottom. My apologies.

**THE COURT:** All right. So you're saying you're going to live or die by 21, under those three cases. 21 is the plus factor that saves you, under *Bilsky, Mayo*, and *Alice*?

**MS. GUSKE:** Yes, because --

THE COURT:  The '007 patent.  Okay.

MS. GUSKE:  And if you look at claim 22, which is the Asserted Claim, that claim is adding a completely separate limitation from what's claimed in claim 21, which necessarily means, then, that claim 22 can't preëmpt every method.  It's adding something different, even with respect to claim 21.

THE COURT:  Well, what about the '372 patent?

MS. GUSKE:  Again, you have the instruction sets that are targeted to performing a specific operation.  So you have the first instruction set that's being executed, and the second instruction set.  And this is in claim 37.

THE COURT:  Yeah.

MS. GUSKE:  And then the interaction with the website.

THE COURT:  37 then?

MS. GUSKE:  Yeah.

THE COURT:  In the '372 patent?

All right.  Anything else?

MS. GUSKE:  With respect to the Asserted Claims?  No, Your Honor.

THE COURT:  Okay.  All right.  So Mr. Turton.

MR. TURTON:  Yes, Your Honor.

THE COURT:  Federal Circuit apparently says that this is a once-in-a-lifetime experience to dismiss a patent claim at the 12(b)(6) stage.  Why aren't those provisions that your

opponent just cited enough, under *Alice*, to let this thing go forward?

**MR. TURTON:**  Well, Your Honor, starting with the '372 patent, the instruction set that Ms. Guske referred to is nothing but the abstract idea.  It's the "How was your order?"; getting a response; and then performing some action based on that.

The addition of interaction with the website is -- as you pointed out, was well known in 2000.  It does nothing -- nothing more than try to circumvent this prohibition on patenting abstract ideas, by limiting it to some particular technological environment.  I mean, in this case, interaction with the website is well known.

And similarly, for claim 22 of the '007 patent, it's -- even though it's written as a system claim, it really is a computer-readable-medium claim.  In other words, it's some memory with instructions for performing the abstract idea.

And then claim 22 adds the e-mail; that you ask the purchasers, "How was your order?" by e-mail.

E-mail was well known in 2000.  In fact, the Background -- if you look at the Background of the '372 patent, which is the same for the '007 patent -- and this is on column 1 -- it specifically mentions the Internet and e-mail used in these precise marketing dialogues; these precise marketing conversations.

So the e-mail or website doesn't add any meaningful limitation to the claim.

THE COURT:  So if I grant this, what am I granting? Dismissal of the first and second cause of action?

MR. TURTON:  That's correct.

THE COURT:  In their entirety?

MR. TURTON:  That's correct.

THE COURT:  With leave to amend?

MR. TURTON:  There's nothing that OpenText can do to save these patents by amending.  The patents are invalid as a matter of law, and thus there's nothing they can amend.

THE COURT:  Why shouldn't I wait, and get more facts, and do claim construction, and be more organized about this?

MR. TURTON:  There are no claim-construction terms at issue.  There are no facts that bear on this.  There are no fact disputes.  Thus, the issue's ripe for determining now.

And, you know, the Supreme Court has said if you can resolve an issue at the 12(b)(6) stage, if there's an issue of fact you can resolve against the plaintiff, you should do it. It streamlines discovery.  It stops needless discovery; needless facts discovery on these patents.

THE COURT:  Okay.

MS. GUSKE:  May I respond?  Thanks.

Defense counsel just said something that struck me as a little odd.  He zeroed in on the notion that website and

e-mails were well known at the time these patents were filed. That is short-shrifting what's supposed to be done in a 101 analysis.  You can't look at these elements in isolation.

Well, was a website known?

Was a server known?

Was a database known?

You have to look at that element, as well, in the context of the entire claim.  How are those being implemented to do the claim steps?

THE COURT:  Well, that's fine, but tell me what makes a difference here?  Because the Supreme Court, in *Mayo* and *Bilsky*, said both the processes -- the concepts -- were, you know, pretty much on the table at the time that the patent was filed.

And I think what he's saying is your concepts were pretty much on the table, as well.

So you've got to take this general proposition and say, "Here is why it makes a difference here."

MS. GUSKE:  Let me answer that, as well.  The reason it makes a difference here is that at this stage in particular, there is a burden on the defendants to prove that -- by clear and convincing evidence, that these things were well known in the context of how they are recited in the claims.  And they have cited no evidence to do that.  They've made no factual assertions, other than just plaintiff's statements that these

things were known.  They have not even bothered to extend that to the context and operation of these claims.  So from a procedural standpoint at this point in time, there is no evidence to support the relief that they're seeking.

THE COURT:  Okay.  Can you answer my question?

This patent was filed in January 2010.  Right?  The '272 patent?

MS. GUSKE:  Ah.  So point of clarification there. There's other patents that are within the same patent family as the '372 and the '007 patent.  And you're looking at the cover of the '372 patent.  There is, about midway on the left column, related U.S. application data.

THE COURT:  Okay.  So --

MS. GUSKE:  The original file date's July 24th, 2000, for this family.  So that's the time frame.

THE COURT:  Okay.  So you're saying you needed to present evidence of the widespread use of e-mail?

MS. GUSKE:  Within the context of the claims.

THE COURT:  I can't just sort of assume that that, based on my personal experience, exists?

MS. GUSKE:  The Supreme Court tells us that you can't do that by looking at these elements just in isolation.  You also have to look at it in the context of how they were being used to implement the claimed inventions.

THE COURT:  Okay.  Anything else?

**MR. TURTON:** Just to address Ms. Guske's point, Your Honor, if you look at the *Alice* Decision, the Supreme Court identifies the abstract idea, and then identifies the additional features that the computer features.

It doesn't look to see whether it was known to -- in the case of *Alice*, to create these records and adjust these records; whether that was known.

The issue is just: Was it known to use a computer in this manner to process data at the time the patent was filed?

**THE COURT:** Okay. I am not sure how we're going to come out on this. I have some serious concerns under *Alice* about the viability or, I should say, patent eligibility of these '007 and '372 patents. And I will reflect further.

In the meantime, where are you all? Things are chugging along. Right? You're doing discovery?

Yes. I know you are, because I'm being bombarded with discovery letters, which I'm not going to deal with today; but you keep all of that on track. Okay? And I will endeavor to get this out, you know, when I can.

**MR. TURTON:** Yes, Your Honor. One other thing. My colleague pointed out that the Model Jury Instructions define "clear and convincing evidence" as "Evidence sufficient to generate a moral conviction in the truth of the matter." Now, this is -- that's in the evidentiary context.

**THE COURT:** Did you develop a moral conviction about

the '007 patent?

(Laughter.)

          **MR. TURTON:**  That e-mail and websites were well known.  Yes.

          **THE COURT:**  All right.  Thank you.

          **MR. TURTON:**  Thank you.

(At 10:01 a.m. the proceedings were adjourned.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____    August 21, 2014
Signature of Court Reporter/Transcriber    Date
Lydia Zinn