UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPEN TEXT S.A.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALFRESCO SOFTWARE LTD, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-04843-JD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

## INTRODUCTION

This patent infringement action began in the Eastern District of Virginia when plaintiff Open Text, S.A., sued defendants Alfresco Software Ltd., Alfresco Software, Inc., and Carahsoft Technology Corp. (collectively with Alfresco, the "defendants"). The defendants moved to dismiss two of Open Text's nine patent infringement claims for invalidity under Section 101 of the Patent Act. After substantial briefing, including supplemental briefing on the Supreme Court's recent decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, 134 S. Ct. 2347 (2014), and oral argument, the Court finds that the challenged claims are directed to a very simple abstract marketing idea that uses generic computer and Internet technology, and contain no additional inventive concept. Consequently, the claims are not patent eligible, and the motion to dismiss is granted with prejudice.

## BACKGROUND

Open Text alleges that it provides Enterprise Content Management ("ECM") products for managing business information, including software tools and services for collaboration, records and email management, and archiving. Dkt. No. 1 at 3. Open Text has revenue streams from licensing, customer support, cloud services, and professional services. *Id*. Alfresco also offers

1  ECM software in the form of online file-sharing and content-management services. *Id*. at 6. Open Text alleges that Alfresco's content-sharing services infringe nine of its patents. *Id*.

On August 1, 2013, the defendants moved to dismiss Open Text's claims of patent infringement with respect to two of the patents-in-suit on the ground of invalidity -- U.S. Patent No. 7,647,372 (the "'372 patent") and U.S. Patent No. 7,975,007 (the "'007 patent"). *See* Dkt. No. 35. That same day, the defendants moved to transfer the case to this District. Dkt. No. 37. On October 11, 2013, the motion to transfer was granted. Dkt. No. 64. During the June 19, 2014 case management conference, the Court ordered Open Text to renotice the motion to dismiss and to reduce its asserted claims to no more than 25. *See* Dkt. No. 125. The parties also submitted statements regarding the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, 134 S. Ct. 2347 (2014), and other recent decisions. *See* Dkt. Nos. 128, 129, 134, 138, 186, 192, 193.

The '372 patent, entitled "Method and System for Facilitating Marketing Dialogues," claims priority to an application filed on July 24, 2000. Dkt. No. 1, Ex. A. The '372 patent provides systems and methods for carrying on marketing dialogues. The '007 patent, also entitled "Method and System for Facilitating Marketing Dialogues," is a continuation of the '372 patent. Dkt. No. 1, Ex. B. The patents appear to be largely duplicative in claims and content, and Open Text made no argument in briefs or during the hearing that the '372 patent and the '007 patent are meaningfully distinguishable for purposes of this motion.

The patents purport to describe an invention that allows a marketer to "communicate with potentially large numbers of customers (or potential customers, or other participants receiving a communication), where communications may involve waiting for, or receiving responses to, communications, and sending subsequent communications (or taking other actions) that depend, for example, on the responses, information known (or surmised) about an individual participant or any number of other factors." Dkt. No. 1, Ex. A 1:63-2:3, Ex. B 1:67-2:7. Translated into plainer English, the patents simply describe a form of the concept of interacting with customers for marketing purposes. To that end, the patents describe a method to gain marketing feedback: a group of people is initially communicated with, a subset of that group is selected, and then an

action is performed with the subset. For example, a sample of customers is asked "How was your order?" A communication is then sent to those customers who respond "Bad" and a "Thank You" message is sent to those customers who respond "Great." Dkt. No. 1, Ex. A, Figs. 2, 5; *id.*, Ex. B, Figs. 2, 5.

Open Text has narrowed its claims so that only claim 38 of the '372 patent and claim 22 of the '007 patent remain at issue. *See* Dkt. No. 129 at 2. Both are dependent claims. Claims 37 and 38 of the '372 patent recite:

> 37. A computer readable storage medium for facilitating a network based dialogue, comprising instructions translatable for:
> assembling a set of first corresponding participants, wherein assembling the first set of corresponding participants comprises executing a first instruction of a first program in conjunction with each of the first corresponding participants, wherein the first instruction is operable to determine the occurrence of a first specified event in conjunction with each of the first corresponding participants;
> assembling a set of second corresponding participants, wherein each of the set of second corresponding participants is in the set of first corresponding participants; and
> executing a second instruction in conjunction with each of the second set of corresponding participants, wherein the second instruction is associated with a first action to be performed in conjunction with each of the set of second corresponding participants.
>
> 38. The computer readable storage medium of claim 37, wherein the first specified event is an interaction with a web site.

Claims 21 and 22 of the '007 patent recite:

> 21. An electronic dialog system comprising:
> a data storage location;
> a dialog computer interfaced with the data storage location and a communications channel, the dialog computer comprising a processor and a tangible computer readable medium storing instructions executable to:
> obtain a set of first corresponding participants;
> execute a first instruction of a program, wherein the program is associated with each of the first corresponding participants, wherein the first instruction causes the dialog computer to communicate with the communications channel to prompt the communications channel to send a first communication to the set of first corresponding participants;
> determine that a specified event has occurred for a set of second corresponding participants, wherein the set of second corresponding participants is in the set of first corresponding participants;

> execute a second instruction of the program to cause the dialog computer to take a first action in conjunction with each of the corresponding participants; and
>
> store a set of data at the data storage location that tracks the state of a dialog.
>
> 22. The electronic dialog system of claim 21, further comprising an email server coupled to the dialog computer, and wherein the dialog computer communicating with the first communications channel further comprises communicating with the email server to cause the email server to send a first email to the set of first corresponding participants.

Translating again into plainer terms, the challenged claims simply describe the use of generic computer and Internet technology to facilitate the customer communications. No special technology or programming is mentioned or envisioned in the claims.

The motion to dismiss asks the Court to find the asserted claims of both the '372 and '007 patents invalid under 35 U.S.C. § 101. According to the defendants, the asserted claims of the '372 and '007 patents merely "computerize" a very basic marketing concept, and so the claims are directed to an abstract idea that is not patentable. *Id*. at 1-2. Open Text opposes the motion, but with scant ammunition in its arsenal. The asserted claims are directed to an abstract idea, and Open Text has failed to articulate any colorable argument to the contrary. In addition, Open Text has failed to identify any "plus factor" -- the inventive concept required under *Alice Corp.* -- that takes these generic computerized marketing claims into the zone of patent-eligible inventions.

# DISCUSSION

## I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*.

The issue of invalidity under Section 101, which is the basis of this motion, presents a question of law. *Accenture Global Servs., GmbH v.Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). And although every issued patent is presumed to have been issued validly absent clear and convincing evidence to the contrary, a number of courts in this District have found patents invalid at the pleading stage and prior to formal claim construction. *See Gametek LLC v. Zynga, Inc*., No. 13-cv-2546 RS, 2014 WL 1665090, at *3 (N.D. Cal. Apr. 25, 2014); *Cardpool, Inc. v. Plastic Jungle, Inc*., No. 12-cv-04182 WHA, 2013 WL 245026, at *3 (N.D. Cal. Jan. 22, 2013); *OIP Tech., Inc. v. Amazon.com, Inc*., No. 12-cv-1233-EMC, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012); *Internet Patents Corp. v. Gen. Auto. Ins. Serv., Inc*., No. 12-cv-05036-JSW, 2013 WL 7936688, at *3 (N.D. Cal. Sept. 24, 2013). Additionally, the Federal Circuit recently affirmed a district court's finding of invalidity under Section 101 at the pleading stage. *See buySAFE, Inc. v. Google Inc.*, No 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014).

It is not necessary in every case to construe the patent claims prior to determining subject matter eligibility. *See Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (explaining that the Court "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101" although "it will ordinarily be desirable -- and often necessary"). In this case, the parties have not sought construction of any terms in the '372 or '007 patents, and this lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under Section 101. *See* Dkt. No. 176 (Joint Claim Construction Statement); *cf. Loyalty Conversion Sys. v. American Airlines, Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *4 (E.D. Tex. Sep. 3, 2014) (Bryson, J., sitting by designation) (proceeding with Section 101 determination at pleading stage after circumstances in that case showed that "there [were] no disputed issues of claim construction that would affect the proper analysis of the

patentability of the asserted claims, and no other issues of fact that [were] material to the section 101 question").

## II. Patent Eligibility

Under Section 101, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Despite Section 101's vast scope, there are three judicially-created exceptions to patentability: laws of nature, natural phenomena and abstract ideas. *See Bilski v. Kappos*, 561 U.S. 593, ___, 130 S. Ct. 3218, 3225 (2010); *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. ___, 132 S. Ct. 1289, 1293 (2012); *Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2354. These principles are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo*, 566 U.S. ___, 132 S. Ct. at 1293 (citations omitted).

In determining whether a claim is patent eligible, a Court first "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2355. If it is, then the Court searches the claim for an "inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." *Id.* at 2357 (internal quotations omitted); *Mayo*, 566 U.S. ___, 132 S. Ct. at 1294 (citing *Bilski*, 130 S. Ct at 3230, for the proposition that "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity'").

## III. The Claims at Issue

### A. Abstract Idea

The Court must first determine whether the claims at issue are directed to a patent-ineligible concept. *See Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2355. The Supreme Court recently reiterated the longstanding rule -- and the basis for the abstract idea exception to patent eligibility -- that "an idea of itself is not patentable." *Id.* The Supreme Court has invalidated a number of patent claims on this basis. *See e.g., Bilski*, 561 U.S. 593, 130 S. Ct. at 3231 (2010) (holding that risk hedging was an abstract idea because "[h]edging is a fundamental economic

6

practice long prevalent in our system of commerce and taught in any introductory finance class"); *Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2356 (finding patent claims "drawn to the concept of intermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk" were an abstract idea beyond the scope of Section 101 because "[t]he use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy").

The claims challenged here fall well within the conceptual zone of *Bilski* and *Alice*, and amount to abstract ideas. They recite a very simple computer-driven method to engage in the commonplace and time-honored practice of interacting with customers to promote marketing and sales. Claim 38 of the '372 patent claims a storage medium containing software that identifies whether each participant in a set of participants has interacted with a website, assembles a set of second participants that are a subset of the first group, and performs an second action with that subset. This describes the most basic and widely-understood principle of marketing: identify potential or current customers and engage with them to improve their customer experience. On its face, asking a customer about his or her experience and replying "Thank You" to those who respond positively and, "I'm sorry, what can we do better?" to those who respond negatively is an unpatentable abstract idea. Claim 22 of the '007 patent is directed at the same abstract idea, and fails for the same reason.

### B. Inventive Concept

The quality of being directed to an abstract idea is not in itself fatal to patentability. Once the Court determines that a claim is directed to a patent-ineligible concept, it must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2355 (internal quotations omitted). The Court in *Alice Corp.* and *Mayo* described this second step of the analysis as "a search for an 'inventive concept' -- *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 566 U.S. at ___, 132 S. Ct. at 1294). The additional steps must be more than "well-understood, routine, conventional activity" or just computerizing the abstract idea. *Mayo*, 566 U.S. at ___, 132

S. Ct. at 1298; *see also Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2357 ("*Mayo* made clear that transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'") (internal quotations omitted).

In *Alice Corp.*, the Court held that a claim directed to an abstract idea does not become patent eligible under Section 101 by "merely requir[ing] generic computer implementation." *Alice Corp.*, 573 U.S. at ___, 134 S. Ct. at 2357. The Supreme Court explained that the method claims in *Alice Corp.* lacked an inventive concept because they "d[id] not, for example, purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id*. at 2359. Instead, the claims only applied the abstract idea "using some unspecified, generic computer." *Id.* at 2360 ("Under our precedents, that is not "*enough*" to transform an abstract idea into a patent-eligible invention."). The system claims failed for the same reason. They invoked "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims." *Id*.

The asserted claims in the '372 and '007 patents similarly fail to transform the abstract idea into a patent-eligible invention. The asserted claims in both patents implement the basic marketing scheme on a generic computer system without any meaningful limitations. Open Text's counsel conceded at the hearing that the patents could be implemented on a generic computer. Open Text argues that the asserted claims "contain limitations tying them to specific ways of using computers." Dkt. 43 at 6-7. But as the Court in *Alice Corp.* and the Federal Circuit have concluded, "[a]t best, that narrowing is an attempt to limit the use of the abstract … idea to a particular technological environment, which has long been held insufficient to save a claim in this context." *buySAFE*, 2014 WL 4337771, at *5 (citing *Alice Corp.*, 134 S. Ct. at 2358) (internal quotations omitted). For example, although claim 37 of the '372 patent -- from which claim 38 depends -- recites a "computer readable storage medium," this adds nothing of substance to the basic, patent-ineligible marketing scheme. *See Alice Corp.*, 134 S. Ct. at 2360 (holding that a claim reciting a "computer-readable medium" was invalid under Section 101); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) ("the 'computer readable medium' limitation of claim 2 does not make the otherwise unpatentable method patent-eligible under §

101"). Nor does claim 38's requirement that participants be identified based on their interaction with a website compel a different result: simply identifying a criterion for selecting participants is a prime example of attempting to save a claim by limiting it to a particular technological environment. *See CyberSource*, 654 F.3d at 1370 (use of the Internet to perform fraud detection did not render the abstract idea of verifying credit card transactions patentable).

Similarly, although claim 22 of the '007 patent recites an "email server coupled to the dialog computer," this limitation is insufficient to render the subject matter of the claim patentable. Rather, that limitation merely builds on the same basic concept as claim 38 of the '372 patent by using email -- a decades-old technology that is certainly not inventive -- to accomplish the abstract and basic marketing scheme. In no way does that sufficiently limit the nature of the abstract idea.

## CONCLUSION

Because the asserted claims of the '372 and '007 patents are patent ineligible under Section 101, defendants' motion to dismiss is granted.

**IT IS SO ORDERED.**

Dated: September 19, 2014

_____
JAMES DONATO
United States District Judge